Argued and submitted July 6, 2000, reversed and remanded for reconsideration
January 31, 2001

# BENJAMIN CALEB FRASIER,
*Petitioner,*

*v.*

# DRIVER AND MOTOR VEHICLE
# SERVICES BRANCH (DMV),
*Respondent.*

(78205; CA A107147)

17 P3d 582

R. Paul Frasier argued the cause and filed the brief for petitioner.

David John Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Petitioner seeks review of an order of the Driver and Motor Vehicle Services Branch (DMV) suspending his driving privileges for one year. ORS 809.410(15). DMV found that petitioner caused or contributed to an accident resulting in the death of two passengers riding in his vehicle, by reason of his unlawful operation of his vehicle in failing to drive within a single lane of travel. ORS 811.370. He raises multiple assignments of error. We reverse and remand.

At dusk, on February 15, 1999, petitioner, age 16, was driving a car on Highway 42 in Coos County. His girlfriend was in the front seat, and his older brother was in the back seat. Petitioner was driving at approximately 55 miles per hour. It was raining heavily, and there was standing water on the roadway. The road was a clearly marked two-lane highway in good repair. After negotiating one turn, petitioner's car failed to negotiate a second turn, left the roadway, scraped a tree in the median and collided with another tree in the median. Both petitioner and the front-seat passenger were wearing safety restraints. The back-seat passenger was not wearing a restraint and may have been lying down in the seat when the accident occurred. Both passengers died soon after the accident. Petitioner was also injured but survived. He submitted to drug and alcohol testing, which indicated that he was not under the influence of any intoxicating substances at the time of the accident. He told an investigating officer shortly after the accident that he thought that his vehicle had hydroplaned, but he stated later to another officer that he was tired but not sleepy and might have either hydroplaned or fallen asleep. Petitioner does not have any recollection of the accident itself. An investigation at the accident scene established that petitioner did not take any corrective steering or braking action after his car left the roadway.

Two months after the accident, DMV notified petitioner that his driving privileges would be suspended for one year, beginning one month after the date of notification. Petitioner requested a hearing on the suspension, and the suspension was stayed pending the outcome of the hearing. At

the hearing, the administrative law judge (ALJ) admitted into the record an Oregon State Police incident report, a copy of petitioner's driving record, testimony from the investigating officer and testimony from petitioner's father, who drove the same road on which the accident occurred on the same evening as the accident, and who testified that it was raining heavily at the time of the accident. Also, an affidavit was before the ALJ from the chief deputy district attorney for Coos County, which stated that he had concluded that petitioner had not violated any provision of the motor vehicle code and that no criminal charges or traffic citations would be filed against petitioner.

The ALJ upheld the suspension of petitioner's license, ruling that petitioner had violated ORS 811.370(1). DMV once again suspended petitioner's driving privileges. Petitioner seeks reversal of DMV's order of suspension. Because his second and third assignments of error are dispositive, we reach only those two assignments. Petitioner's second assignment of error is that "DMV erred when it concluded that the Petitioner caused or contributed to the accident in question." His third assignment is that "DMV erred when it concluded that the Petitioner caused or contributed to the accident in question through the unlawful operation of a vehicle." As we understand them, petitioner's arguments under those assignments of error are that the order is based on a flawed interpretation of ORS 811.370(1) and that the ALJ failed to make findings of fact that supported his conclusion. Specifically, petitioner takes issue with the ALJ's statement that "[t]he very fact that the vehicle left the road establishes, *prima facie*, a violation of the statute." He argues that forces unrelated to his driving conduct caused his car to leave his lane of travel and that he, therefore, did not violate the statute. He asserts that because the ALJ did not make a finding about the cause of his leaving his lane of travel, the order is defective. Petitioner also argues that "DMV had the burden of proving that in fact petitioner caused or contributed to this accident."

DMV responds that the ALJ correctly interpreted the statute and that petitioner violated ORS 809.410(15), whether his failure to maintain a single lane was because he fell asleep, he was traveling too fast and lost control, he

hydroplaned, or simply because he failed to keep his car within a single lane of travel. DMV concludes that there is substantial evidence to support the ALJ's finding that petitioner's vehicle left its lane in violation of ORS 811.370(1),[1] which in turn justifies a suspension under ORS 809.410(15).

■■ The first step toward resolution of petitioner's arguments involves the interpretation of ORS 811.370(1). In interpreting a statute, we turn first to the text and context of the provision itself. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The text of ORS 811.370(1) places two distinct requirements on a driver. Under section (1)(a), drivers must "operate the vehicle as nearly as practicable within a single lane." Under section (1)(b), the driver must "refrain" from leaving the driver's lane of travel once within it, unless it is safe to do so. DMV has the burden of proving a driver's failure to comply with those statutory requirements.[2]

---

[1] ORS 811.370(1) provides:

"A person commits the offense of failure to drive within a lane if the person is operating a vehicle upon a roadway that is divided into two or more clearly marked lanes for traffic and the driver does not:

"(a) Operate the vehicle as nearly as *practicable* entirely within a single lane; *and*

"(b) *Refrain* from moving from that lane until the driver has first made certain that the movement can be made with safety." (Emphasis added.)

[2] ORS 183.413(2) provides, in part:

"Prior to the commencement of a contested case hearing before any agency including those agencies identified in ORS 183.315, the agency shall inform each party to the hearing of the following matters:

"(a) If a party is not represented by an attorney, a general description of the hearing procedure including the order of presentation of evidence, what kinds of evidence are admissible, whether objections may be made to the introduction of evidence and what kind of objections may be made and an *explanation of the burdens of proof or burdens of going forward with the evidence*." (Emphasis added.)

ORS 183.415(7) provides:

"At the commencement of the hearing, the officer presiding shall explain the issues involved in the hearing and the matters that the parties must either prove or disprove."

In this case, petitioner was told in his Notice of Suspension that the specific findings against him were that he caused or contributed to an accident resulting in death to another person through incompetence, recklessness, criminal negligence or unlawful operation of a motor vehicle. The specific findings were listed as, "you lost control of your vehicle and failed to maintain your lane of travel." Then, petitioner was told in a Notice of Hearing that "the Department must prove at the

■■ We interpret ORS 811.370(1) in accordance with the ordinary meaning of its words. "Practicable" means "possible to practice or perform," "capable of being put into practice, done or accomplished," or "feasible." *Webster's Third New Int'l Dictionary*, 1780 (unabridged ed 1993). To "refrain," in its common parlance and in its dictionary definition, requires "holding back," "putting a restraint upon," or "checking or inhibiting an inclination or impulse." It means "to keep oneself from doing, feeling, or indulging in something." *Id.* at 1909. "To refrain" is an act of the will. Thus, under subsection (1)(b), to establish that a driver did not "refrain" from moving from the lane until it was safe to do so, DMV must show that a driver was capable of staying in his or her lane of travel. When read in context, the words "practicable" and "refrain" demonstrate that the legislature intended that the statute would not be violated unless the driver did not stay within the lane because of an act or omission that was within his control.

■ In that light, we turn to DMV's order. ORS 183.470(2) requires that a final order in a contested case contain findings of fact and conclusions of law. It may be necessary to remand a case if the requisite findings or conclusions are missing from an order. *Albertson's, Inc. v. Bureau of Labor and Industries*, 128 Or App 97, 101, 874 P2d 1352 (1994). The ALJ found that: (1) that the road was a clearly marked two-lane road; (2) that petitioner's vehicle left its lane of travel, went off the roadway, and struck two trees; (3) that the collision caused two deaths; (4) that petitioner was not charged with any offense or issued any citation; and (5) that petitioner does not have a good recollection of the time immediately preceding the incident. The order also included the following finding:

> "The officer who investigated the accident concluded that it was likely caused by either hydroplaning or driver fatigue. He determined that it was more likely that driver fatigue,

hearing: 1) You caused or contributed to an accident resulting in the death to any other person. 2) You caused or contributed to the accident through incompetence, recklessness, criminal negligence, or unlawful operation of a motor vehicle." He was told in a Bill of Rights distributed by the Department that, "The burden of presenting evidence to support a fact or position rests on the proponent of the fact or position."

rather than hydroplaning, was the cause of the accident. He was, though, unable to conclude with certainty that such was the case. It had been raining in the area near the time of the incident."

It is unclear whether the ALJ adopted the officer's opinion or whether he was merely reciting the officer's opinion. Significantly, the ALJ did not make an express finding as to the cause for petitioner's leaving his lane of travel.

Even more problematic is the language in the order that appears to shift the burden of proof to petitioner to show that it was practicable for him to remain in his lane and to refrain from leaving it. The ALJ held that the fact that the vehicle left the road was *prima facie* evidence of a violation of the statute. The order reads:

"The very fact that the vehicle left the road establishes, *prima facie*, a violation of the statute. Granted, as argued by Petitioner, it is always possible that the leaving of the road could have been due to a gust of wind or some other thing and not the fault of Petitioner. Certainly it is possible that something like that could occur. However, there is nothing in the record sufficient to establish that such was likely the case and to overturn the *prima facie* case.

"Petitioner argues that, since hydroplaning [ ] was a possible cause of the vehicle leaving the road, and since Petitioner did not have any control over rain being deposited on the road, he should not be found to have been at fault and to have caused the accident. Under the motor vehicle code, though, a person is required to drive within their lane, at all times, rain or shine, as long as this is 'practicable.' This may require certain driving adjustments in terms of speed, alertness, etc. in the case of bad weather conditions such as a heavy rainstorm. It is possible that a sudden unexpected deluge of rain or an unanticipated large pool of water could cause it to not be 'practicable' to drive entirely within one's lane. Here again, though, there is no evidence in the record to establish that such was the case."

We are unaware of any construction of the language in the statute or other principle of law that supports the ALJ's "*prima facie*" reasoning, and DMV argues none to us.[3]

---

[3] In its brief, DMV argues, "Although petitioner might be correct in stating that events beyond a driver's control can excuse compliance with the statute, that

Without an express finding as to the cause of the departure from the lane of travel, and disregarding the ALJ's erroneous reasoning that any departure is a *"prima facie"* violation of the statute, it is unclear whether the ALJ would have found a violation of ORS 811.370(1). Inasmuch as the suspension of petitioner's driver's license is predicated on the conclusion that petitioner violated the statute simply by leaving the roadway, reconsideration by the ALJ is required.

Reversed and remanded for reconsideration.

.

---

argument would appear to apply only to sudden, unforeseeable events, and not to every instance where driving conditions [were] less than ideal."