Argued and submitted July 17, 2001, affirmed January 23, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# DAVID ROBERT McBROOM,
*Appellant.*

## CR9912541; A109543

39 P3d 226

John Henry Hingson III argued the cause and filed the brief for appellant.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Kistler, Judge, and Van Hoomissen, Senior Judge.

KISTLER, J.

**KISTLER, J.**

Defendant was charged with driving under the influence of intoxicants (DUII). Before trial, he moved to suppress evidence obtained as a result of an allegedly invalid traffic stop. The trial court upheld the validity of the stop, and defendant challenges that ruling on appeal. We affirm.

We state the facts consistently with the trial court's findings. *State v. Morton*, 151 Or App 734, 737, 951 P2d 179 (1997), *rev den* 327 Or 521 (1998). Shortly after midnight, Deputy Sheriff John Zbinden noticed a Corvette driving westbound on Highway 212. Although the car was staying within its lane, it was predominantly to the left of the lane. As the Corvette rounded a large turn in the highway, it failed to "respond appropriately to the curve." Its tires drifted onto the closer of the double yellow dividing lines and stayed on top of that line for 300 feet or more.

Based on what he had seen, Zbinden concluded that defendant had failed to stay within his lane, in violation of ORS 811.370, and stopped him. After speaking with defendant, Zbinden also developed probable cause to believe that defendant was driving under the influence of intoxicants and arrested him for that crime.

Before trial on the DUII charge, defendant moved to suppress evidence that Zbinden had obtained as a result of the traffic stop. He argued that Zbinden lacked probable cause to believe that he had violated ORS 811.370. Defendant raised two related but separate arguments in support of his motion. He argued that he had stayed within his lane, as ORS 811.370(1)(a) requires, because he had not crossed over the center line. Alternatively, he argued that, even if he had failed to stay within his lane in violation of ORS 811.370(1)(a), ORS 811.370(1)(b) permitted him to move outside his lane as long as he did so safely. Defendant reasoned that nothing the officer had observed could reasonably have caused him to conclude that defendant's actions were unsafe. The court disagreed and denied defendant's motion. The jury found that defendant was guilty of driving under the influence of intoxicants. On appeal, defendant argues that the

court erred in denying his motion to suppress. He raises the same arguments on appeal that he raised below.

 Oregon statutes require probable cause to stop a person for a traffic infraction. *State v. Matthews*, 320 Or 398, 402, 884 P2d 1224 (1994). Probable cause has both a subjective and objective component. *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986); *see Matthews*, 320 Or at 403 n 3 (applying the constitutional test to determine whether the statutory probable cause standard had been satisfied). In this case, there is no dispute that Zbinden subjectively believed that defendant had violated ORS 811.370. The only question is whether the objective component of that test was satisfied—whether a reasonable person could conclude on these facts that it was more likely than not that defendant had violated ORS 811.370.[1]

As noted, defendant advances two arguments on that point. He argues that ORS 811.370(1)(a) does not prohibit driving on the center line and that, even if it does, ORS 811.370(1)(b) permits driving outside one's lane if it is safe to do so. Defendant argues that, because there was no evidence that his actions posed any safety concerns, he did not violate the statute. *A fortiori*, the officer lacked probable cause to believe that he did. Because defendant's arguments turn on what ORS 811.370 prohibits, we begin with the statute's text. It provides, in part:

"(1) A person commits the offense of failure to drive within a lane if the person is operating a vehicle upon a roadway that is divided into two or more clearly marked lanes for traffic and the driver does not:

"(a) Operate the vehicle as nearly as practicable entirely within a single lane; and

"(b) Refrain from moving from that lane until the driver has first made certain that the movement can be made with safety."

Defendant argues initially that he did not violate subsection (a) of the statute. He acknowledges that his tires were on the double yellow line, but he argues that, as long as

---

[1] The question whether a person reasonably believed that probable cause exists presents a question of law. *Morton*, 151 Or App at 737.

he did not cross that line, he stayed "within a single lane," as the statute requires. Defendant reasons: "As in tennis, 'If it hits the line, it's in.' " The state responds that, if defendant's interpretation were correct, ORS 811.370(1)(a) would authorize two cars traveling in opposite directions on a two-lane road to both drive on the center line.

∎ The statute's text and context lead us to conclude that the state's interpretation of subsection (1)(a) is correct. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993). Subsection (1) of the statute provides that it applies to roadways that are "divided into two or more clearly marked lanes for traffic." Subsection (1)(a) requires that drivers operate their vehicles "as nearly as practicable entirely within a single lane." Read together, those two subsections make clear that the phrase "within a single lane" does not mean "on" the lines that mark or divide the lanes. Rather, the statute requires that drivers stay "within" the lines that mark the lanes. The statute's text demonstrates that the legislature did not intend to permit opposing motorists to vie for control of the center dividing line.[2]

∎∎ To be sure, the statutory requirement that a driver stay "entirely within a single lane" is not absolute. The legislature has modified that requirement by adding the phrase "as nearly as practicable." Practicable means "possible to practice or perform," "capable of being put into practice, done

---

[2] The statute's context leads to the same conclusion. The legislature has stated that its policy in enacting the vehicle code is "[t]o provide maximum safety for all persons who travel or otherwise use the public highways of this state." ORS 801.020(11)(a); *see DLCD v. Jackson County*, 151 Or App 210, 218, 948 P2d 731 (1997), *rev den* 327 Or 620 (1998) (statements of general policy in statutes and rules provide instructive context); *State v. Thomas*, 104 Or App 126, 130, 799 P2d 208 (1990) (looking to ORS 801.020(11)(a) to interpret other provisions in the vehicle code). The state's interpretation of ORS 811.370(1)(a) advances the legislature's stated policy; defendant's interpretation defeats it.

Defendant argues, however, that ORS 811.430 provides relevant context that supports his position. That statute prohibits driving "on a highway divider," which it defines as "a dividing space, barrier or * * * clearly indicated dividing section so constructed as to impede vehicular traffic * * *." ORS 811.430(1). The fact, however, that the legislature has prohibited driving on median strips and other barriers separating highways provides no reason to interpret the requirement that drivers stay within their lanes as permitting them to drive on the lines that mark the boundaries of those lanes.

or accomplished" or "feasible." *Frasier v. DMV*, 172 Or App 215, 220, 17 P3d 582 (2001). What is practicable or feasible will vary with the circumstances of each case. *See id.* There is nothing in this record, however, to suggest that defendant failed to stay within his lane because he was responding to an apparent hazard or because he had some other valid reason for leaving his lane. *See id.* Rather, defendant drove for more than 300 feet on the center line for no apparent reason. Given those facts, the officer reasonably believed that defendant had failed to stay "within [his] lane" in violation of subsection (a) of the statute.[3]

Defendant advances an alternative argument. He argues that, even if he failed to stay "within [his] lane," as subsection (a) requires, he did not violate ORS 811.370 unless he also failed to comply with subsection (b), which requires that a driver "[r]efrain from moving from [his or her] lane until the driver has first made certain that the movement can be made with safety." Defendant argues that subsections (a) and (b) are two elements of a single offense; both must be proven to establish the offense. He also argues that, as a factual matter, "[t]here is no evidence that the movement (even if driving on a yellow line is a violation of the first element of the statute) made was made without regard to whether it could be made 'with safety.' "

■ We agree with defendant that subsections (a) and (b) should be read together. *See Frasier*, 172 Or App at 220 (reading those two subsections together). We disagree, however, that subsection (b) permits a driver to stray from his or her lane (or straddle two lanes) as long as he or she can do so safely. Subsection (b) is more limited in its scope. It specifies what a person must do before he or she moves from one lane to another. It provides that a driver must "[r]efrain from moving from [his or her] lane until the driver has first made certain that the movement can be made with safety." Subsection (a) thus states the general rule—a driver should operate his

---

[3] This is not a case in which defendant's car's tires touched the center line only briefly. We accordingly need not decide whether that act, standing alone, would give an officer probable cause to believe that a driver had failed to operate his or her car "as nearly as practicable entirely within a single lane."

or her vehicle "as nearly as practicable entirely within a single lane." Subsection (b) states when a driver may depart from that rule. By its plain language, however, subsection (b) does not excuse drivers from staying within their lanes unless (1) they are moving from one lane to another and (2) they first make certain that they can do so safely.[4]

■ In this case, defendant does not claim that he was moving from one lane to another. He was not attempting to cross the double yellow line to pass a car ahead of him. Not only was there no car in front of defendant, but passing on a double yellow line would have constituted a different traffic offense. *See* ORS 811.420 (making it an offense to pass on the left where prohibited); ORS 810.120(2)(b) (double yellow lines mark a no-passing zone). In any event, the question on appeal is whether the officer had probable cause to stop defendant for a traffic infraction, and the officer reasonably could have concluded that defendant was not moving from one lane to another when he failed to stay within his lane. Because the officer had probable cause to believe that defendant had violated ORS 811.370, the trial court correctly denied defendant's motion to suppress.

Affirmed.

---

[4] The courts of other states have not interpreted this uniform traffic provision uniformly. *See Rowe v. State*, 363 Md 424, 769 A2d 879 (2001) (holding that Maryland's statute prohibits only unsafe lane changes); *State v. Lafferty*, 291 Mont 157, 162-63, 967 P2d 368 (1998) (explaining that Montana's comparable "statute relates to moving from a marked traffic lane to another marked traffic lane"); *People v. Smith*, 172 Ill 2d 289, 665 NE2d 1215 (1996) (Illinois' statute establishes two separate requirements for lane usuage—to drive in single lane and move from the lane only after it has been determined that it can be done safely). Not only does this split in authority provide little reason to interpret our statute one way or the other, but our Supreme Court has directed us to interpret statutes according to their text and context. *PGE*, 317 Or at 611-12. We follow that methodology here.