714 S.E.2d 917

**The STATE, Respondent,**

v.

**Sandy BURGESS, Appellant.**

**No. 4871.**

Court of Appeals of South Carolina.

Heard May 4, 2011.

Decided Aug. 17, 2011.

408

Benjamin A. Stitely and Robert T. Williams, Sr., of Lexington, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Deborah R.J. Shupe, and Solicitor Daniel E. Johnson, all of Columbia, for Respondent.

LOCKEMY, J.

In this Fourth Amendment search and seizure case, Sandy Burgess appeals her convictions and sentences for trafficking crack cocaine, possession with intent to distribute (PWID) cocaine, PWID ecstasy and possession of marijuana. Burgess argues the trial court erred in determining Investigator John Lutz had reasonable suspicion to stop her vehicle. We affirm.

## FACTS

On May 22, 2008, Narcotics Investigator John Lutz drove through the parking lot of the Hardee's on Rosewood Drive in Columbia, South Carolina. According to Lutz, the Hardee's parking lot is a known meeting location for drug sales in Richland County. Lutz explained a manager at the Hardee's complained to another investigator about drug activity "every few months" over the course of a "couple of years." According to Lutz, he personally spoke with the manager regarding the drug activity, and he and other officers had made arrests stemming from activity in the Hardee's parking lot.

As Lutz drove through the lot, he observed a Jeep with lightly tinted windows backed into a parking space at the back of the parking lot. Lutz noticed the passenger was "looking around very intently and smoking a cigarette." Neither the driver nor the passenger appeared to be eating. Based on Lutz's training and experience he believed the pair was waiting to purchase drugs. Lutz explained he formed this belief based on his twenty-two years of law enforcement experience, including nine years in narcotics investigations, and his training at the South Carolina Criminal Justice Academy. According to Lutz, he had overseen "several hundred" undercover narcotics investigations during which an undercover purchaser would typically have to wait for the supplier to arrive in order to conduct a transaction.

After observing the Jeep and its occupants, Lutz parked nearby in order to continue observation of the parking lot and the Jeep and its occupants. A few minutes later, Burgess entered the parking lot in a white car, backed up, and parked her car askew in a parking space a few feet from Lutz's location. The Jeep proceeded toward Burgess's location, waited for her to park, and pulled along the passenger side of her vehicle. The passenger in the Jeep got out and entered the back passenger seat of Burgess's vehicle while extending his hand toward Burgess. Lutz observed Burgess look over her shoulder while the passenger in Burgess's car looked down towards Burgess's lap. After approximately fifteen seconds, the passenger from the Jeep exited Burgess's car and returned to the Jeep. Lutz explained the complaints of drug activity in the parking lot, his training and experience, and his "prior knowledge of people doing the exact same thing" led him to conclude he had observed a drug transaction.

Burgess and the Jeep exited the Hardee's parking lot traveling west on Rosewood Drive. Lutz followed both vehicles but soon after, the Jeep turned off of Rosewood Drive.[1] Lutz chose to follow Burgess's car because the fact that she arrived at the Hardee's parking lot second led him to believe she was the supplier. Burgess turned onto South Maple Street and after a short distance entered a driveway. Lutz

---

[1]. Lutz requested the aid of another officer; however, none were available to give assistance.

pulled in behind Burgess and initiated his blue lights. Burgess and the passenger quickly exited the vehicle, and Lutz observed a small black bag in Burgess's left hand. Lutz instructed Burgess and the passenger to reenter the vehicle. Lutz explained as Burgess sat down in the driver's seat she leaned over to her left "like she was trying to put something up under the left side of the car." Lutz instructed Burgess to stand up and keep her hands visible. As Burgess stood up she made a kicking motion with her right leg "like she was trying to kick an object under the vehicle." Lutz discovered a black bag containing several types of drugs on the driveway below the driver's seat.[2] Lutz arrested Burgess and the passenger.

Burgess was indicted for trafficking in crack cocaine, PWID marijuana, PWID cocaine, and PWID ecstasy. Prior to the bench trial,[3] Burgess moved to suppress the drug evidence, arguing Lutz lacked reasonable suspicion to stop her. The trial court denied Burgess's motion and ultimately found Burgess guilty of trafficking crack cocaine, PWID cocaine, and PWID ecstasy. The trial court found Burgess not guilty of PWID marijuana, but found her guilty of the lesser included offense of possession of marijuana. The trial court sentenced Burgess to thirty days for possession of marijuana, and concurrent sentences of eight years for the trafficking and PWID charges. This appeal followed.

## STANDARD OF REVIEW

■ When reviewing a Fourth Amendment search and seizure issue, this court must affirm if there is any evidence to support the trial court's ruling and will reverse only where there is clear error. *State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 326 (2011); *State v. Brockman*, 339 S.C. 57, 66, 528 S.E.2d 661, 666 (2000). In applying this standard of review, we must determine if the record supports the trial court's assumed findings, and if those findings support the

---

**2.** Later testing determined the black bag held 20 tablets containing MDMA and/or BZP, 15.02 grams of crack cocaine, 7.44 grams of cocaine, and 16.69 grams of marijuana. MDMA is commonly known as ecstasy and BZP is a simulant comparable to amphetamine.

**3.** Burgess waived her right to a jury trial.

trial court's determination regarding reasonable suspicion or probable cause. *State v. Tindall,* 388 S.C. 518, 523 n. 5, 698 S.E.2d 203, 206 n. 5 (2010); *State v. Khingratsaiphon,* 352 S.C. 62, 70, 572 S.E.2d 456, 460 (2002) (applying the any evidence standard of review but noting an appellate court may conduct "its own review of the record to determine whether the trial judge's decision is supported by the evidence").

## LAW/ANALYSIS

Burgess argues the trial court erred in determining Lutz had reasonable suspicion to initiate the stop of her vehicle. We disagree.

The Fourth Amendment of the Constitution of the United States prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Evidence seized in violation of the Fourth Amendment must be excluded from trial. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

A vehicle stop constitutes a seizure and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *State v. Banda,* 371 S.C. 245, 252, 639 S.E.2d 36, 40 (2006); *State v. Rogers,* 368 S.C. 529, 533, 629 S.E.2d 679, 681 (Ct.App.2006). Accordingly, a police officer may stop a vehicle when the officer has probable cause to believe a traffic violation has occurred, *State v. Woodruff,* 344 S.C. 537, 546, 544 S.E.2d 290, 295 (Ct.App.2001), or when the officer has reasonable suspicion the occupants are involved in criminal activity. *Knight v. State,* 284 S.C. 138, 141, 325 S.E.2d 535, 537–38 (1985).

Generally, a police officer may stop and briefly detain and question a person for investigative purposes, without treading upon his Fourth Amendment rights, when the officer has a reasonable suspicion the person is involved in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion is a specific and objective basis, supported by articulable facts, for suspecting another of criminal activity. *U.S. v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Black's Law Dictionary* 1585 (9th ed.2009). In determining whether reasonable

suspicion exists, the totality of the circumstances must be considered. *Cortez*, 449 U.S. at 417–18, 101 S.Ct. 690.

Initially, we note that Burgess does not challenge the admission of the drug evidence on grounds that Lutz exceeded the scope of the *Terry* stop. *See State v. Corley*, 383 S.C. 232, 241, 679 S.E.2d 187, 192 (Ct.App.2009), *aff'd as modified*, 392 S.C. 125, 708 S.E.2d 217 (2011) ("The scope and duration of [the stop] must be strictly tied to and justified by the circumstances that rendered its initiation proper."). Instead, Burgess maintains Lutz lacked reasonable suspicion to stop her and the drug evidence should have been excluded because it was the result of an illegal seizure. Therefore, our analysis examines whether Lutz had reasonable suspicion to initiate a *Terry* stop of Burgess and does not address whether the events that occurred after the stop were proper.

■ We find the evidence in the record supports the trial court's determination that Lutz had reasonable suspicion to stop Burgess. At the time Lutz activated his blue lights, Lutz was aware the Hardee's parking lot was a known meeting location for drug sales and had personal knowledge of frequent complaints of drug activity in the parking lot. Lutz observed the Jeep parked at the back of the parking lot. Its occupants were not eating and appeared to be waiting for someone. Lutz observed Burgess enter the parking lot and park haphazardly. The passenger from the Jeep entered the rear passenger seat of Burgess's car with his hand extended while Burgess looked in his direction. The events in Burgess's car lasted fifteen seconds. Lutz explained this activity was suspicious because, in his experience with several hundred narcotics investigations, buyers usually arrive at a predetermined location to wait on a supplier in order to complete a drug transaction. Lutz further explained he had prior knowledge of similar drug transactions occurring in the same manner. In short, Lutz had personal knowledge of complaints of drug activity at the Hardee's parking lot and observed Burgess's behavior in the parking lot, which his training and experience informed him was consistent with a drug sale.

Burgess's contention the Hardee's parking lot cannot be a known location for drug activity because Richland County's online arrest database includes only one drug arrest at the

Hardee's parking lot is without merit. This fact indicates only the database contains one drug arrest which listed the Hardee's parking lot as the incident location. It does not foreclose the existence of other arrests related to drug activity in the Hardee's parking lot but not designating it as the incident location. For instance, in this case the drug activity occurred in the Hardee's parking lot; however, the incident location is listed as the location where Burgess was arrested. Additionally, in finding Lutz had reasonable suspicion, the trial court relied upon Lutz's personal knowledge of frequent complaints by the Hardee's manager regarding drug activity in the parking lot.

Furthermore, while the activity in the Hardee's parking lot is capable of innocent explanation, "[t]he fact that this activity was taking place in a location well known [for drug sales] alters the landscape of reasonable inferences." *See U.S. v. Johnson,* 599 F.3d 339, 345 (4th Cir.2010). Lutz was not required "to ignore the relevant characteristics of [the] location in determining whether the circumstances [were] sufficiently suspicious to warrant further investigation." *See Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Furthermore, Lutz's inferences regarding the degree of suspicion to attach to Burgess's conduct are entitled to deference. *See Johnson,* 599 F.3d at 342. Failing to afford the proper weight to Lutz's inferences "borne out of his experience would be to fail to consider the 'totality of the circumstances.'" *See U.S. v. McCoy,* 513 F.3d 405, 414–15 (4th Cir.2008). The *Johnson* court explained:

> Getting the balance right is never guaranteed, but the chances of doing so are improved if officers, through training, knowledge, and experience in confronting criminality, are uniquely capable both of recognizing its signatures, and by the same token, of not reading suspicion into perfectly innocent and natural acts. In this way, experience leads not just to proper action but to prudent restraint. 'Reasonableness' is a matter of probabilities, and probability in turn is best assessed when one has encountered variations on a given scenario many times before.

*Johnson,* 599 F.3d at 343. To find as Burgess would have us do would be to discount Lutz's training and experience with similar drug transactions.

Burgess argues *United States v. Sprinkle* supports a finding Lutz lacked reasonable suspicion. 106 F.3d 613 (4th Cir.1997). The *Sprinkle* court found reasonable suspicion lacking where Sprinkle was observed huddling in a car with a known drug offender in a high drug crime area. *Id.* at 617–19. The court noted that as the officer walked by the car he was able to "actually see that nothing of a criminal nature was happening in the car" thus dispelling his suspicion. *Id.* at 618. Here, Lutz explained he was not able to see what was exchanged between Burgess and the Jeep's passenger. In other words, unlike the officer in *Sprinkle*, nothing that occurred before Lutz stopped Burgess served to dispel his suspicion. Therefore, we conclude *Sprinkle* is distinguishable and lends Burgess no support.

■ We are mindful of concerns regarding the State "using whatever facts are present, no matter how innocent, as indicia of suspicious activity" and that the State "must do more than simply label a behavior as 'suspicious' to make it so." *See U.S. v. Foster*, 634 F.3d 243, 248 (4th Cir.2011). The State must "be able to either articulate why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity than may appear at first glance." *Id.* Here, the State articulated why the events in the Hardee's parking lot were likely indicative of criminal activity at the time Lutz observed them: (1) the Hardee's parking lot was a known meeting location for drug sales, and (2) Lutz's training and prior knowledge of similar drug transactions led him to believe the activity he observed in the parking lot was a drug transaction. *See Johnson*, 599 F.3d at 345 (relying on officer's conclusion, based on his training and experience, that hand-to-hand contact between the defendant and several men in rapid succession in a location known for drug sales was indicative of a drug transaction in finding reasonable suspicion existed).

Finally, a finding that Lutz had reasonable suspicion under the facts present here is consistent with the recent decision by our supreme court in *State v. Corley*, 392 S.C. 125, 708 S.E.2d 217 (2011). There, Officer Futch observed Corley drive up to a known drug house at 2:50 in the morning, walk to the back of the house, stay for less than two minutes, and return to his car and leave. *Id.* at 126, 708 S.E.2d at 217. Futch followed

Corley a short distance before stopping him after he failed to use his turn signal. *Id.* Although the court noted the traffic violation formed an independent basis for the stop, the court found the stop was justified based on the presence of reasonable suspicion. *Id.* at 127–28, 708 S.E.2d at 218. In our view, the facts here are analogous to those in *Corley.* Both the house in *Corley* and the Hardee's parking lot are known locations for drug activity. Additionally, Futch and Lutz both observed behavior that was consistent with the criminal activity the location was known for. For the foregoing reasons, we conclude the trial court properly determined Lutz had reasonable suspicion to stop Burgess.

## CONCLUSION

The decision of the trial court is
**AFFIRMED.**

FEW, C.J. and PIEPER, J. concur.