734 S.E.2d 182

**The STATE, Respondent,**

v.

**Gene Howard VINSON, Appellant.**

**Appellate Case No. 2009–146227.**

**No. 5044.**

Court of Appeals of South Carolina.

Heard June 5, 2012.
Decided Oct. 31, 2012.
Rehearing Denied Nov. 30, 2012.

Heath P. Taylor, of Taylor Law Firm, LLC, of West Columbia; and Pete G. Diamaduros, of White Diamaduros & Diamaduros, of Union, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, and Senior Assistant Deputy Attorney General Salley W. Elliott, all of Columbia; and Solicitor Kevin Brackett, of York, for Respondent.

WILLIAMS, J.

On appeal, Gene Vinson ("Vinson") contends the circuit court erred in denying his motion to dismiss because the police did not have a reasonable articulable suspicion to justify the traffic stop resulting in Vinson's arrest. We affirm.

## FACTS/PROCEDURAL HISTORY

On Saturday, February 7, 2009, at approximately 3:00 a.m., Trooper C.B. Horne ("Trooper Horne") of the South Carolina Highway patrol was patrolling Highway 215 in Union County. Highway 215 is a two-lane roadway with both the northbound and southbound lane having its own yellow lane line to indicate passing is prohibited. Trooper Horne testified he was driving from Buffalo towards downtown Union, and he passed Vinson's vehicle in the opposing lane. Trooper Horne then turned around and observed Vinson's vehicle drift "back and forth" between the double yellow lines that separated the opposing lanes of traffic. Based on this observation, Trooper Horne activated his dash camera and followed Vinson for approximately two-tenths of a mile. Trooper Horne testified Vinson's vehicle never completely crossed into the opposing lane nor did it drift again into the center of the two yellow lines after Trooper Horne turned on his dash camera.

However, based on his experience, statistics, the absence of any other traffic on the road, the day of week, and the time of night, Trooper Horne stated he suspected Vinson was under the influence of alcohol. As such, Trooper Horne decided to pull Vinson over at that time because they were traveling into "a well-populated area[ ] [where there were] a lot of houses, a

lot of hills," and further, Trooper Horne concluded it would be unfair to conduct any field sobriety tests on sloped terrain.

Trooper Horne testified that as soon as he asked for Vinson's license and registration, he noticed Vinson's eyes were bloodshot and detected an odor of alcohol emanating from Vinson's vehicle. Trooper Horne asked Vinson if he had been drinking, to which Vinson replied he had not. Trooper Horne then asked Vinson to exit his vehicle. Once Vinson exited his vehicle, Trooper Horne stated he asked Vinson again whether he had been drinking, and Vinson admitted he drank four or five beers in the past hour. Trooper Horne then asked Vinson to perform two field sobriety tests. Vinson agreed, and Trooper Horne read him his *Miranda* rights. According to Trooper Horne, Vinson failed both tests, and after Vinson stumbled numerous times while attempting to walk a straight line, he stated, "[B]e straight with me. I just failed that." In response, Trooper Horne asked Vinson whether he would like to repeat the test, which Vinson did without success. Accordingly, Trooper Horne arrested Vinson for driving under the influence. Vinson performed a breathalyzer test at the police station, which registered Vinson's blood alcohol content as 0.14.[1]

On October 13, 2009, Vinson made a pretrial motion to dismiss his charge on the ground the traffic stop was not based upon reasonable suspicion or probable cause; thus, the traffic stop was an unreasonable seizure in violation of the Fourth Amendment. After hearing Trooper Horne's testimony, the circuit court denied Vinson's motion. In support of its decision, the circuit court ruled,

> The statute says that the vehicle shall be operated as nearly as practicable ... within a single lane. I interpret [that] to mean if it's impossible to stay in that lane because of an obstruction on the road or the road conditions[;] ... I don't interpret that as giving the driver freedom to reign back and forth as he deems practicable in his driving.... And if you're on that line then you are not within the lane; ... I don't see where it makes any difference whether you are over the line one inch or a foot or a yard, if you've crossed the yellow line, technically it's a violation of the statute....

---

1. The legal blood alcohol concentration limit in South Carolina is 0.08.

I find that under these specific circumstances that I've outlined, the officer was reasonable, that he did have reasonable, articulable suspicion, and so I would deny your motion to dismiss the case on that ground[ ].

Vinson was subsequently tried on November 10, 2009. He was convicted of driving under the influence, second offense. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, the appellate court reviews errors of law only. *State v. Banda,* 371 S.C. 245, 251, 639 S.E.2d 36, 39 (2006). As such, an appellate court is bound by the circuit court's factual findings unless they are clearly erroneous. *Id.* "The appellate court will reverse only when there is clear error." *State v. Rogers,* 368 S.C. 529, 533, 629 S.E.2d 679, 681 (Ct.App.2006). "The same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases." *Banda,* 371 S.C. at 251, 639 S.E.2d at 39. "[Thus, the appellate court's] review in Fourth Amendment search and seizure cases is limited to determining whether any evidence supports the [circuit] court's finding." *Id.* Restated, "[a]n appellate court must affirm the [circuit] court's ruling if there is *any* evidence to support the ruling." *State v. Pichardo,* 367 S.C. 84, 96, 623 S.E.2d 840, 846 (Ct.App.2005) (emphasis in original).

## LAW/ANALYSIS

Vinson contends the circuit court erred in finding it was lawful to stop his vehicle because Vinson's conduct did not violate section 56–5–1900 of the South Carolina Code (2006). Thus, his arrest was the result of an illegal stop and in violation of his Fourth Amendment rights. We disagree.

The Fourth Amendment to the Constitution of the United States grants citizens the right to be secure against unreasonable searches and seizures. U.S. Const. amend. IV; *see also* S.C. Const. art. I, § 10. A traffic stop constitutes a Fourth Amendment seizure; thus, the traffic stop must be reasonable under the circumstances. *See Rogers,* 368 S.C. at 533, 629 S.E.2d at 681; *see also Pichardo,* 367 S.C. at 97, 623 S.E.2d at 847 (citing *Whren v. U.S.,* 517 U.S. 806, 810, 116

S.Ct. 1769, 135 L.Ed.2d 89 (1996)). "Reasonableness is measured in objective terms by examining the totality of circumstances." *Pichardo,* 367 S.C. at 101, 623 S.E.2d at 849. A traffic stop is not unreasonable if conducted with probable cause to believe a traffic violation has occurred, or when the officer has a reasonable suspicion the occupants are involved in criminal activity. *State v. Burgess,* 394 S.C. 407, 412, 714 S.E.2d 917, 919 (Ct.App.2011); *see also Whren,* 517 U.S. at 810, 116 S.Ct. 1769 ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). Moreover, a police officer's "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *State v. Corley,* 383 S.C. 232, 241, 679 S.E.2d 187, 192 (Ct.App.2009) (internal quotation marks omitted).

In denying Vinson's motion to dismiss, the circuit court found Trooper Horne had reasonable suspicion to believe Vinson violated section 56–5–1900. Section 56–5–1900 states, in pertinent part:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply ... [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that such movement can be made with safety.

§ 56–5–1900(a). To support its decision, the circuit court held there was no evidence or testimony that Vinson "could not have maintained his vehicle within that single lane had he chosen to do so." Because section 56–5–1900(a) requires a driver to remain within his lane "as nearly as practicable," the circuit court concluded the driver may only leave his lane "if it's impossible to stay in that lane because of an obstruction on the road or the road conditions or something of that nature." In finding Trooper Horne possessed reasonable suspicion that Vinson violated section 56–5–1900, the circuit court also noted the "totality of circumstances," including the officer's consideration of the time of day, the day of the week, the lack of other cars on the road, and Vinson's proximity to a hilly, populated area.

■ We concur with the circuit court's decision that Trooper Horne was justified in stopping Vinson for a perceived violation of section 56–5–1900.[2] *See State v. Butler,* 343 S.C. 198, 539 S.E.2d 414 (Ct.App.2000) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. The police, however, may also stop and briefly detain a vehicle if they have a reasonable suspicion that the occupants are involved in criminal activity."). The plain language of section 56–5–1900 requires a driver to maintain his vehicle "entirely within a single lane" and excuses this mandate only when it is not practicable or the driver can safely change lanes. *See* § 56–5–1900(a) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that such movement can be made with safety."). Trooper Horne testified Vinson's front tire crossed into the area between the double yellow lines that separated opposing lanes of traffic in a "no passing" zone. This action, in and of itself, is a violation of the statute.[3] Furthermore, Trooper Horne stated there were no other cars on the road during that time that would have prompted Vinson's decision to cross the center line. Because it was practicable to remain within his

---

**2.** We note our decision regarding the violation of section 56–5–1900 does not entail a totality of circumstances analysis; rather, our conclusion is solely based on Vinson's violation of the plain language of the statute.

**3.** Vinson highlights case law from other jurisdictions in which courts construed similar statutory language and held that minor infractions over a lane line were an insufficient basis for a stop. While we acknowledge a split of authority, we are persuaded by the line of cases in which courts have found the purpose of the "as nearly as practicable" language is to keep both drivers and pedestrians safe, not to allow motorists the option of when they will or will not abide by a lane requirement. *See U.S. v. Bassols,* 775 F.Supp.2d 1293, 1300–01 (D.N.M.2011) (rejecting the argument that a vehicle making contact with an lane marker is "entirely within a single lane" under a statute similar to section 56–5–1900(a), as such an interpretation could lead to the absurd result that two vehicles traveling toward each other could each be "entirely within a single lane" even though they both are partially on the same lane marker); *see also People v. Smith,* 172 Ill.2d 289, 216 Ill.Dec. 658, 665 N.E.2d 1215, 1218–19 (1996); *State v. Hodge,* 147 Ohio App.3d 550, 771 N.E.2d 331, 338 (2002); *State v. McBroom,* 179 Or.App. 120, 39 P.3d 226, 228–29 (2002).

lane of traffic, we find Trooper Horne had the requisite reasonable suspicion to pull Vinson's vehicle over for a violation of section 56–5–1900. Accordingly, the circuit court properly denied Vinson's motion to dismiss.

## CONCLUSION

Based on the foregoing, the circuit court's decision is

**AFFIRMED.**

THOMAS and LOCKEMY, JJ., concur.