**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Appellant,

v.

Tami Baker Sisler, Respondent.

Appellate Case No. 2015-000604

———————

Appeal From York County
J. Cordell Maddox, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2017-UP-458
Heard September 20, 2017 – Filed December 6, 2017

———————

**AFFIRMED**

———————

Attorney General Alan McCrory Wilson and Assistant Attorney General William M. Blitch, Jr., of Columbia; and Solicitor Kevin Scott Brackett, of York, for Appellant.

Edward L. Phipps, of Phipps Law Firm, LLC, of Charleston, for Respondent.

———————

**PER CURIAM:** The State of South Carolina appeals the circuit court's order affirming the magistrate court's dismissal of Tami Baker Sisler's charges for

driving under the influence (DUI) and child endangerment. The State asserts that if this court construes Sisler's second encounter with Deputy Christopher Haire, of the York County Sheriff's Office, as a "traffic stop," it was a valid traffic stop supported by probable cause. Thus, the State contends the magistrate court erred in relying on Deputy Haire's subjective intent in finding the stop unconstitutional. Alternatively, the State posits Deputy Haire did not unreasonably "seize" Sisler. Therefore, the State contends that even if this court determines the traffic stop was improper, there was still no Fourth Amendment violation. Finally, the State argues this case presents this court with the opportunity to adopt the community caretaker exception.[1] We affirm.

At approximately 10:25 p.m. on August 17, 2013, Deputy Haire came upon Sisler's vehicle lodged in the grass median and facing the wrong direction on South Anderson Road/Highway 5 in. According to Sisler, who was traveling with her two minor children, once she realized she was driving down the wrong side of the four lane highway, she pulled into the median to avoid oncoming traffic and her vehicle became stuck. Deputy Haire and an unnamed individual worked for approximately eight minutes to free Sisler's vehicle. Deputy Haire then provided Sisler with directions, specifying she needed to take the first right to get to Rock Hill.[2]

When Sisler missed the turn, Deputy Haire, who was traveling behind her, flashed his headlights and blue lights. Sisler then pulled over and as she exited her vehicle, she grabbed the door for stability. Upon questioning by Deputy Haire, Sisler admitted she had been drinking. Thereafter, Deputy Haire obtained Sisler's driver's license, performed the horizontal gaze nystagmus test, and called Deputy David Fowler to perform field sobriety tests. Deputy Fowler subsequently arrested Sisler for DUI and child endangerment.

---

[1] Because the "community caretaker" theory was neither raised to nor ruled on by the magistrate court or the circuit court, we find it is not preserved for our review. *See State v. Freiburger*, 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005) (explaining that an argument advanced on appeal but not raised and ruled on below is not preserved for review).

[2] During the initial encounter with Sisler, another officer radioed Deputy Haire to ask whether she was intoxicated; he responded she was not.

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Whren v. United States*, 517 U.S. 806, 809 (1996) (quoting U.S. Const. amend. IV); *see also* S.C. Const. art. I, § 10 (protecting "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures"). "This guarantee 'protects against unreasonable searches and seizures, including seizures that only involve a brief detention.'" *Robinson v. State*, 407 S.C. 169, 181, 754 S.E.2d 862, 868 (2014) (quoting *State v. Pichardo*, 367 S.C. 84, 97, 623 S.E.2d 840, 847 (Ct. App. 2005)). "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren*, 517 U.S. at 809–10. "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. "Accordingly, a police officer may stop a vehicle when the officer has probable cause to believe a traffic violation has occurred, or when the officer has reasonable suspicion the occupants are involved in criminal activity." *State v. Burgess*, 394 S.C. 407, 412, 714 S.E.2d 917, 919 (Ct. App. 2011) (citations omitted). "Reasonable suspicion is something more than an 'inchoate and unparticularized suspicion' or hunch." *Robinson*, 407 S.C. at 182, 754 S.E.2d at 868 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). "Instead, looking at the totality of the circumstances, reasonable suspicion requires there be an objective, specific basis for suspecting the person stopped of criminal activity." *Id.* "Moreover, a police officer's 'subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.'" *State v. Vinson*, 400 S.C. 347, 352, 734 S.E.2d 182, 184 (Ct. App. 2012) (quoting *State v. Corley*, 383 S.C. 232, 241, 679 S.E.2d 187, 192 (Ct. App. 2009)).

In granting Sisler's motion to dismiss, the magistrate court found Deputy Haire lacked either probable cause to believe Sisler committed a traffic violation or the reasonable suspicion necessary to validate the traffic stop. The circuit court affirmed the dismissal.

Our review of the record and the dashboard camera (dash cam) recording reveals Deputy Haire initiated his blue lights and stopped Sisler when she missed the turn to Rock Hill. While maintaining he neither activated his blue lights before Sisler pulled over nor initiated a traffic stop, Deputy Haire insisted numerous times the only reason he signaled Sisler was because she missed the turn he instructed her to take during their initial encounter. Thereafter, Deputy Haire admitted he "stopped"

Sisler for missing the turn but continued to argue he did not initiate a traffic stop. Deputy Haire then again revised his testimony, stating that although Sisler did commit a traffic violation by crossing the centerline, he "may not have initiat[ed] a stop for that; because, she pulled over on her own when she passed the point of where she was supposed to turn."  He later testified, "It's not a traffic stop, but I witnessed her on the roadway."  After the dash cam recording was published at the suppression motion hearing before the magistrate court, Deputy Haire admitted he flashed his blue lights but testified he did not activate them and leave them on until Sisler began to pull over on the side of the road.  Nevertheless, he continued to maintain the encounter was not a traffic stop.

We find no clear error in the circuit court's determination that Deputy Haire "seized" Sisler within the meaning of the Fourth Amendment when he flashed and then activated his blue lights as he pulled over behind Sisler's vehicle.  *See State v. Morris*, 411 S.C. 571, 578, 769 S.E.2d 854, 857 (2015) ("The appellate court will reverse only when there is clear error." (quoting *State v. Missouri*, 361 S.C. 107, 111, 603 S.E.2d 594, 596 (2004))).  Sisler testified she pulled over because Deputy Haire activated his blue lights when she missed the turn he instructed her to take. At that point, a reasonable person in Sisler's position would not have felt free to leave.  *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (concluding "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave").  Because section 56-5-750(A) of the South Carolina Code (2006) requires drivers to stop when signaled by law enforcement, we agree that Deputy Haire seized Sisler when he flashed his blue lights and further activated them as he pulled over behind her.[3]  Despite his conflicting testimony, Deputy Haire eventually admitted drivers are legally required to pull over when they observe blue lights.  Yet, he lacked the requisite probable cause or reasonable suspicion to initiate a stop at that time.  *See Burgess*, 394 S.C. at 412, 714 S.E.2d at 919 (explaining an officer may stop a vehicle when he has either probable cause to believe a traffic violation has occurred or reasonable suspicion to believe the occupants are involved in criminal activity). Because missing a turn is not a violation of any South Carolina statute, we find no error in the circuit court's finding that the stop was unlawful.

---

[3] Section 56-5-750(A) states in pertinent part, "In the absence of mitigating circumstances, it is unlawful for a motor vehicle driver, while driving on a road, street, or highway of the State, to fail to stop when signaled by a law enforcement vehicle by means of a siren or flashing light."

After Deputy Haire testified he stopped Sisler for missing the turn and not for crossing the centerline, the State continued to argue that whatever his reason for the stop, it was lawful because he observed Sisler crossing the centerline. However, the magistrate and circuit courts ultimately found the dash cam recording to be inconclusive regarding the alleged traffic violation. For example, in its return, the magistrate court explained,

> Even though the State argues that Sisler crossed the line, Sisler argued no. Granted, it appeared she crossed over, [but] it was not conclusive. Also [Deputy] Haire's testimony wavered back and forth whether this was a traffic stop or checking on Sisler. This all occurred within one mile of the first incident and the second incident with Sisler.

The circuit court noted that even after seeing the inconclusive video,

> Deputy Haire continued to deny that it was the reason he "pulled" her. [The assistant solicitor] asked Deputy Haire if he had noticed [Sisler] driving left of center prior to flashing his blue lights, to which Deputy Haire responded, "Yeah, I mean, I had seen that during the driving part of it. But, I mean, I'm not going to argue that that's why I pulled her. I blinked my lights for the turn. I didn't pull her over on a traffic stop."

> The State cannot create new reasoning to justify a traffic stop when said reasoning did not exist at the time of the stop. The State has continued to go back and forth, changing their position/reasoning in this case to try to justify the unlawful stop. There are/were no specific and/or articulable facts of unlawful conduct.

(citation omitted).

We recognize that it would be error to inject an officer's subjective intent into the analysis of a traffic stop. *See*, *e.g.*, *State v. Bash*, 419 S.C. 263, 276, 797 S.E.2d 721, 728 (2017) (explaining that a court must focus on "the objective purpose of the officers' actions" in considering a Fourth Amendment search or seizure). Here, however, like the magistrate and circuit courts, our review of the dash cam recording provides no conclusive objective basis for this traffic stop. *See Morris*,

411 S.C. at 578, 769 S.E.2d at 858 ("When reviewing a Fourth Amendment search and seizure case, an appellate court must affirm if there is any evidence to support the ruling." (quoting *State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 326 (2011))). It is likewise unclear to this court whether Deputy Haire actually observed Sisler crossing the centerline on the night of the incident. *Contra Vinson*, 400 S.C. at 353–54, 734 S.E.2d at 185 (affirming the circuit court's ruling that an officer was justified in stopping a driver for a perceived violation of section 56-5-1900 of the South Carolina Code (2006) when the officer testified the driver drifted between the double yellow lines and he suspected the driver was under the influence of alcohol). Significantly, Deputy Haire never informed Deputy Fowler that he observed Sisler crossing the centerline. In fact, Deputy Fowler's arrest report stated, "She was swerving in *her lane* and then abruptly pulled over." (emphasis added). Considering the totality of the circumstances, we find no clear error in the circuit court's affirmance of the magistrate court's determination that Deputy Haire lacked the requisite probable cause to initiate the traffic stop. *See State v. George*, 323 S.C. 496, 509, 476 S.E.2d 903, 911 (1996) ("Whether probable cause exists depends upon the totality of the circumstances surrounding the information at the officer[']s disposal.").

We further agree Deputy Haire lacked the requisite reasonable suspicion to believe Sisler was involved in criminal activity prior to initiating the traffic stop. *See Robinson*, 407 S.C. at 182, 754 S.E.2d at 868 ("Instead, looking at the totality of the circumstances, reasonable suspicion requires there be an objective, specific basis for suspecting the person stopped of criminal activity."). Upon his initial encounter with Sisler, Deputy Haire radioed that she was not intoxicated; he testified she did not smell of alcohol and was not acting erratically; and after interacting with her for approximately twenty minutes, he sent her on her way. Deputy Haire admitted that his suspicion that Sisler was under the influence did not develop until the second interaction when she exited her car and grabbed the door for stability. Accordingly, we find no clear error in the circuit court's affirmance of the magistrate court's determination that Deputy Haire lacked the requisite reasonable suspicion for a traffic stop.

**Conclusion**

For the foregoing reasons, the circuit court's order affirming the magistrate court's dismissal of Tami Baker Sisler's charges for DUI and child endangerment is

**AFFIRMED.**

**WILLIAMS, THOMAS, and MCDONALD, JJ., concur.**