The STATE, Appellant,

v.

Scott Eugene WILLIAMS, Respondent.

Opinion No. 5405
Appellate Case No. 2013–002307

Court of Appeals of South Carolina.

Heard November 12, 2015
Filed May 25, 2016

Attorney General Alan McCrory Wilson and Assistant Attorney General William M. Blitch, Jr., both of Columbia, and Solicitor William Walter Wilkins, III, of Greenville, for Appellant.

G. David Seay, Jr., of David Seay, Jr., LLC, of Greenville, for Respondent.

KONDUROS, J.:

The State appeals the circuit court's order affirming the magistrate's dismissal of the driving under the influence (DUI) charge against Scott E. Williams. The State contends because Williams was stopped without going through the driver's license checkpoint, the magistrate and circuit court erred in requiring the State to provide evidence to support the constitutionality of the checkpoint. The State also maintains the magistrate exceeded its authority in considering Williams's motion to dismiss, holding a pretrial preliminary hearing, and dismissing the case. We reverse and remand.

**FACTS**

On March 26, 2011, the South Carolina Highway Patrol set up a driver's license checkpoint in Greenville, South Carolina at the bottom of a hill. Around 3 a.m., Williams approached the checkpoint but made a U-turn after coming over the hill. Trooper David Robertson [1] notified his supervisor that a vehicle had made a U-turn and was told to pursue the car. Trooper

---

1. At times, the record refers to Trooper Robertson as "Robinson," but the traffic ticket and list of officers on duty at the checkpoint both identify him as Robertson.

Robertson drove over the hill and saw the vehicle stopped in the backside of a parking lot with its lights turned off. Trooper Robertson approached the vehicle, noticed the odor of alcohol, and observed the driver's—Williams's—eyes were glassy and his speech was slurred. Following field sobriety tests, Trooper Robertson charged Williams with DUI.

Williams was scheduled for trial by a magistrate on the DUI charge. On March 14, 2013, prior to the swearing of the jury, the magistrate heard arguments on Williams's motion to require the State to demonstrate the checkpoint was constitutional. The State called Trooper Robertson to testify about the license checkpoint. Trooper Robertson gave some details about the checkpoint but indicated he was not at the checkpoint the entire time it was in place and he had not decided the location of the checkpoint. He testified Williams did not drive through the checkpoint but instead made a U-turn on the hill. The State argued it had established the constitutionality of the checkpoint but even if it had not, the stop was proper for other reasons. It asserted that once Williams made the U-turn, Trooper Robertson had probable cause or reasonable suspicion to suspect a traffic violation had occurred under section 56–5–2140 of the South Carolina Code. The State also argued the act of turning around upon seeing the checkpoint constituted reasonable suspicion.

Williams argued the State had not met the burden of proof for proving the checkpoint constitutional. Further, he asserted a person in the United States has no obligation to travel through a checkpoint. He argued the only evidence the State had presented for stopping him was his avoidance of the checkpoint because his U-turn was not unlawful as section 56–5–2140 provided "no person shall turn the vehicle in the opposite direction unless such movement can be made in safety without interfering with other traffic."[2]

The State argued Williams only referred to subsection (a) of 56–5–2140 but subsection (b) provided "no vehicle shall be turned so as to proceed in the opposite directions upon any

---

2. This varies slightly from the actual wording of this subsection, which is, "The driver of any vehicle shall not turn such vehicle so as to proceed in the opposite direction unless such movement can be made in safety and without interfering with other traffic." S.C. Code Ann. § 56–5–2140(a) (2006).

curb or upon the approach to or near the crest of a grade where such vehicle can not be seen by the driver of any other vehicle approaching by either direction within 500 feet."[3] The State maintained because Williams was on a hill, that was the case here. The magistrate determined no testimony had been presented about the legality of the U-turn but the State could recall Trooper Robertson to testify about it. Trooper Robertson then testified Williams's U-turn was illegal because just as Williams came over the grade, he made the U-turn within at most two hundred feet of where the crest starts to grade down. On cross-examination, Trooper Robertson admitted he had not measured the distances and was guesstimating.[4] He testified that at the crest of the hill, one could see in the other direction a distance of over five hundred feet.

The magistrate noted that while the State submitted reports constituting empirical data that could be used to justify the location of the checkpoint, it had not presented a sufficient foundation as to how the reports were prepared and whether they were considered as part of the decision to set up the checkpoint. Based on this lack of foundation, the magistrate determined the case would turn on whether the U-turn was sufficient cause for Williams to be stopped. The magistrate stated that without actual measurements, which he noted went to the weight of the evidence and not its admissibility, the evidence was insufficient to establish Williams made the U-turn within five hundred feet of the crest of the hill. The magistrate orally ruled it was "grant[ing] the defense motions." Following the hearing, the magistrate issued its return stating it had dismissed the case based on its finding the State lacked probable cause and had presented no admissible evidence regarding the constitutionality of the checkpoint.

3. This subsection actually states: "No vehicle shall be turned so as to proceed in the opposite direction upon any curve or upon the approach to or near the crest of a grade where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction within five hundred feet." S.C. Code Ann. § 56–5–2140(b) (2006).

4. The magistrate's return indicated that the week following the hearing, Trooper Robertson had informed the magistrate that since he testified, he had measured the distance where this occurred and the applicable distance was over one thousand feet.

The State made a motion for reconsideration on several grounds including the magistrate erred in (1) ruling pretrial the action should be dismissed or evidence suppressed because the State was not required to establish the constitutionality of a driver's license checkpoint when the driver committed an unlawful U-turn; (2) ruling pretrial the action should be dismissed or evidence suppressed because the testimony of Trooper Robertson established sufficient probable cause or reasonable suspicion Williams violated the U-turn code section; (3) ruling pretrial the action should be dismissed before the State had an opportunity to present its case in chief; and (4) holding what amounted to a preliminary hearing on the existence of probable cause for the stop and arrest.[5]

The magistrate conducted a hearing on the reconsideration motion. The State asserted it still was challenging the magistrate's rulings on the legality of the checkpoint and Trooper Robertson having probable cause to stop Williams because of the violation of the U-turn statute. However, the State contended the magistrate had not ruled on its argument Trooper Robertson had a reasonable suspicion to stop Williams based on the totality of the circumstances. The State provided those circumstances were (1) Trooper Robertson found the U-turn unusual; (2) Williams turned into a parking lot; and (3) Williams turned off his headlights. Williams argued the State had not made the necessary objections to preserve most of its arguments.

The State also argued the magistrate had erred in the remedy it provided Williams. The State stated it believed the magistrate ruled the case was dismissed for lack of probable cause, and Williams concurred. The State argued "dismissal is a remedy authorized by statute," like the videotaping provision contained in section 56–5–2953 of the South Carolina Code, which provides dismissal is appropriate when the State does not comply with the requirements of that section. The State argued that here, no authorizing provision allows dismissal. The State cited to *State v. Ramsey*,[6] in which the supreme court found the magistrate erred in dismissing a case

---

**5.** The State raised several additional issues regarding the constitutionality of the checkpoint decision.

**6.** 381 S.C. 375, 673 S.E.2d 428 (2009).

for lack of probable cause because magistrates are not entitled to hold preliminary hearings on charges within their trial jurisdiction. Williams responded the State did not make a contemporaneous objection to the dismissal at the initial hearing. The magistrate denied the motion for reconsideration, stating despite *Ramsey*, "the fundamental flaws in the State's case can not be corrected upon retrial."

The State appealed to the circuit court, arguing the magistrate court erred in (1) holding a preliminary hearing on a charge within its jurisdiction and dismissing the case for lack of probable cause; (2) ruling reasonable suspicion did not exist to justify the stop based on the totality of the circumstances; (3) dismissing the action because Trooper Robertson's testimony established sufficient probable cause or reasonable suspicion Williams violated section 56-5-2140 to justify the stop; and (4) ruling the State failed to present sufficient evidence and competent witnesses to establish the constitutionality of the checkpoint.[7]

The circuit court held a hearing on the matter. Williams asserted that at the initial hearing before the magistrate the State never objected to the propriety of the motion or the magistrate's authority to hear and make a ruling on it, so the State's issues were unpreserved. The State asserted it did object on the record at the hearing to having to prove the constitutionality of the checkpoint prior to trial, citing page 8 of the transcript, stating "we don't agree with [Williams] that we have not shown the constitutionality of the checkpoint, but it doesn't matter in this case because [Williams] did not go to the checkpoint." The State also argued the magistrate erred in finding the State did not have probable cause to arrest Williams because the State has no burden to prove probable cause pretrial and the State's burden is to show the officer had a reasonable suspicion to stop Williams. The State asserted it had reasonable suspicion because Williams made a U-turn once he saw the checkpoint, fleeing the scene; drove into a

---

7. The State consolidated these issues into two issues in its brief to the circuit court: (1) the State had no pretrial burden to prove the constitutionality of the checkpoint because Williams evaded the checkpoint and (2) the State did not have a pretrial burden to show probable cause for Williams's arrest.

parking lot away from the scene; pulled to the backside of the parking lot; and turned off his lights.

The circuit court issued an order affirming the magistrate. It found the State appealed two issues: (1) whether the State had a pretrial burden to prove the constitutionality of the checkpoint and (2) whether the State had a pretrial burden to show probable cause for Williams's arrest. As to the checkpoint, the circuit court found no error because the magistrate reviewed the testimony and evidence presented by the State and concluded the State had not established a proper foundation. As to the probable cause versus reasonable suspicion standard, the circuit court found that even if a reasonable suspicion standard applied, the State could not meet its burden because the stop and arrest were premised on the validity of the checkpoint, which the magistrate correctly determined was without foundation. The circuit court noted the State was unable to prove the U-turn was illegal and only showed it appeared evasive. The circuit court further determined the magistrate properly considered *Ramsey*.

The State filed a motion for reconsideration, which the circuit court denied. This appeal followed.

## STANDARD OF REVIEW

 "In criminal appeals from magistrate or municipal court, the circuit court does not conduct a *de novo* review, but instead reviews for preserved error raised to it by appropriate exception." *State v. Henderson*, 347 S.C. 455, 457, 556 S.E.2d 691, 692 (Ct. App. 2001). Further, an appellate court reviewing the circuit court's appeal may review for errors of law only. *Id.* Thus, an appellate court "is bound by the trial court's factual findings unless they are clearly erroneous." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).

## LAW/ANALYSIS

### I. Basis for the Stop

The State argues because Williams was stopped without going through the checkpoint, the circuit court erred in affirming the magistrate's requiring the State to provide evidence to support the constitutionality of the checkpoint. The State contends because the validity of the checkpoint was irrelevant, the only issue is whether the magistrate erred in finding

Trooper Robertson lacked probable cause or reasonable suspicion to stop and detain Williams. The State also contends the magistrate erred in requiring probable cause instead of reasonable suspicion. We agree.

## A. Constitutionality of the Checkpoint

■ First, the magistrate held the State failed to prove the constitutionality of the checkpoint. We agree with the State this was not required.[8]

In *United States v. Scheetz*, 293 F.3d 175 (4th Cir. 2002), the Fourth Circuit looked at a situation similar to the one here. In that case "narcotics officers ... observed a [vehicle] approach the checkpoint signs and then execute an illegal [U]-turn across the grass median after passing the first checkpoint sign but before reaching the checkpoint itself. Upon observing that conduct, the narcotics officers pursued the [vehicle] and executed a stop." *Id.* at 182–83.

The Fourth Circuit found

nothing improper with respect to the stop and subsequent search of Scott Brooks's car and person. Because of his vehicular flight prior to arriving at the checkpoint, Scott Brooks was not seized for Fourth Amendment purposes by the show of police authority by virtue of the checkpoint signs or the checkpoint itself. *California v. Hodari D.*, 499 U.S. 621, 626–29 [111 S.Ct. 1547, 113 L.Ed.2d 690] (1991) (no seizure for Fourth Amendment purposes when a defendant did not acquiesce in the show of police authority); *id.* at 629 [111 S.Ct. 1547] ("Assuming that [the officer's] pursuit ... constituted a 'show of authority' in enjoining Hodari to halt, since Hodari did not comply with that injunction he

8. Williams asserts this issue is unpreserved. We disagree. "To preserve an issue for review there must be a contemporaneous objection that is ruled upon by the trial court." *State v. Johnson*, 363 S.C. 53, 58, 609 S.E.2d 520, 523 (2005). "If a party fails to properly object, the party is procedurally barred from raising the issue on appeal." *Id.* at 58–59, 609 S.E.2d at 523. During the hearing, the State maintained that even if it had not proved the checkpoint was constitutional, it did not need to because Williams did not go through the checkpoint. The State argued Trooper Robertson had probable cause to believe Williams had violated the U-turn statute or had a reasonable suspicion that criminal activity was afoot due to the U-turn before the checkpoint. Accordingly, this issue is preserved.

was not seized until he was tackled."); *Brower v. Cty. of Inyo*, 489 U.S. 593, 599 [109 S.Ct. 1378, 103 L.Ed.2d 628] (1989) (holding that for purposes of determining whether the roadblock worked a Fourth Amendment seizure, the controlling considerations are whether: (1) the motorist "was meant to be stopped by the physical obstacle of the roadblock"; and (2) the motorist "was so stopped"); *Latta v. Keryte*, 118 F.3d 693, 700 (10th Cir. 1997) (holding that a fleeing motorist was not seized for Fourth Amendment purposes until the law enforcement officers were successful in stopping the motorist at a roadblock); *Bella v. Chamberlain*, 24 F.3d 1251, 1256 (10th Cir. 1994) (holding that, unless the law enforcement officer's show of authority succeeds in restraining a person, the person has not been seized within the meaning of the Fourth Amendment).

*Scheetz*, 293 F.3d at 183 (alterations by court).

The Supreme Court of North Carolina recently addressed a similar issue in *State v. Griffin*, 366 N.C. 473, 749 S.E.2d 444 (N.C. 2013). In that case, "[d]efendant approached a checkpoint marked with blue flashing lights. Once the patrol car lights became visible, defendant stopped in the middle of the road, even though he was not at an intersection, and appeared to attempt a three-point turn by beginning to turn left and continuing onto the shoulder." *Id.* at 447. The court determined based on the circumstances in that case, "because the trooper had sufficient grounds to stop defendant's vehicle based on reasonable suspicion, it is unnecessary for this [c]ourt to address the constitutionality of the driver's license checkpoint." *Id.*

■ In the present case, the magistrate erred in finding the State had to establish the constitutionality of the checkpoint. Both *Scheetz*, 293 F.3d at 183, and *Griffin*, 749 S.E.2d at 447, hold the analysis for determining if a checkpoint is constitutional only applies when a vehicle is stopped at the checkpoint and does not apply when the vehicle does not actually make it to the checkpoint. Here, Williams turned around before he got to the checkpoint; thus, he was never actually stopped by the checkpoint. Accordingly, the magistrate erred in requiring the State to prove the checkpoint was constitutional.

## B. Probable Cause and Reasonable Suspicion

The magistrate also found the State lacked probable cause to stop Williams. The State argues it did establish probable cause to stop Williams for a traffic violation. It also maintains even if it did not establish probable cause, it demonstrated it had reasonable suspicion criminal activity was afoot based on the totality of the circumstances. We agree the State established it had reasonable suspicion and because police can stop a vehicle for either reasonable suspicion or probable cause, it was error for the magistrate to dismiss the case for lack of probable cause.

 "The Fourth Amendment guarantees a person the right to be secure from unreasonable searches and seizures. '[T]he Fourth Amendment protects against unreasonable searches and seizures, including seizures that involve only a brief detention.'" *State v. Vickery*, 399 S.C. 507, 514–15, 732 S.E.2d 218, 221 (Ct. App. 2012) (alteration by court) (citations omitted) (quoting *State v. Pichardo*, 367 S.C. 84, 97, 623 S.E.2d 840, 847 (Ct. App. 2005)). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *State v. Butler*, 343 S.C. 198, 201, 539 S.E.2d 414, 416 (Ct. App. 2000) (quoting *Whren v. United States*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)).

> A traffic stop constitutes a Fourth Amendment seizure; thus, the traffic stop must be reasonable under the circumstances. "Reasonableness is measured in objective terms by examining the totality of circumstances." *Pichardo*, 367 S.C. at 101, 623 S.E.2d at 849. A traffic stop is not unreasonable if conducted with probable cause to believe a traffic violation has occurred, or when the officer has a reasonable suspicion the occupants are involved in criminal activity.

*State v. Vinson*, 400 S.C. 347, 351–52, 734 S.E.2d 182, 184 (Ct. App. 2012) (citations omitted).

 "The decision to stop an automobile is reasonable whe[n] the police have probable cause to believe that a traffic violation has occurred." *State v. Banda*, 371 S.C. 245, 252, 639 S.E.2d 36, 40 (2006). "A finding of probable cause may be based upon less evidence than would be necessary to support a

conviction." *Lapp v. S.C. Dep't of Motor Vehicles*, 387 S.C. 500, 506, 692 S.E.2d 565, 568 (Ct. App. 2010). "Probable cause may be found somewhere between suspicion and sufficient evidence to convict." *State v. Blassingame*, 338 S.C. 240, 250, 525 S.E.2d 535, 540 (Ct. App. 1999). "Whether probable cause exists depends upon the totality of the circumstances surrounding the information at the officer[']s disposal." *State v. George*, 323 S.C. 496, 509, 476 S.E.2d 903, 911 (1996). "Moreover, a police officer's 'subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.'" *Vinson*, 400 S.C. at 352, 734 S.E.2d at 184 (quoting *State v. Corley*, 383 S.C. 232, 241, 679 S.E.2d 187, 192 (Ct. App. 2009)).

 "The police ... may also stop and briefly detain a vehicle if they have a reasonable suspicion that the occupants are involved in criminal activity." *Butler*, 343 S.C. at 201, 539 S.E.2d at 416.

A police officer may stop and briefly detain and question a person for investigative purposes, without treading upon his Fourth Amendment rights, when the officer has a reasonable suspicion supported by articulable facts, short of probable cause for arrest, that the person is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968). "Reasonable suspicion" requires a "particularized and objective basis that would lead one to suspect another of criminal activity." *United States v. Cortez*, 449 U.S. 411, 418 [101 S.Ct. 690, 66 L.Ed.2d 621] (1981). In determining whether reasonable suspicion exists, "the totality of the circumstances—the whole picture—" must be considered. *Id.* at 417 [101 S.Ct. 690].

*State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002). "Under the United States Supreme Court's definition of reasonable suspicion, the facts and inferences relied on by the officer must be articul*able*, not necessarily articulat*ed*." *Robinson v. State*, 407 S.C. 169, 184 n.9, 754 S.E.2d 862, 869 n.9 (2014).

The United States Supreme Court has held:

Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have avail-

able empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

*Illinois v. Wardlow*, 528 U.S. 119, 124–25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).

The Court further explained:

[I]n *Florida v. Royer*, 460 U.S. 491 [103 S.Ct. 1319, 75 L.Ed.2d 229] (1983), ... [the Supreme Court] held that when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. *Id.* at 498 [103 S.Ct. 1319]. And any "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick*, 501 U.S. 429, 437 [111 S.Ct. 2382, 115 L.Ed.2d 389] (1991). But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Wardlow*, 528 U.S. at 125, 120 S.Ct. 673.

In a Fourth Circuit Court of Appeals case similar to the present one, the court held:

[T]he principles of *Wardlow* apply to evasive conduct by drivers approaching a police roadblock. As with an individual who encounters police on foot, "[h]eadlong flight" or other "nervous, evasive behavior" in response to a roadblock may contribute to reasonable suspicion that the driver is engaged in criminal activity. *Id.* at 124 [120 S.Ct. 673]. Such evasive behavior is "not going about one's business," *id.* at 125 [120 S.Ct. 673] (internal quotation marks omitted), but instead suggests that the driver is avoiding the roadblock for other than innocent reasons, *see id.* at 124–25 [120 S.Ct. 673]. Indeed, we have repeatedly recognized that evasive reactions to the presence of police may be considered in deter-

mining whether reasonable suspicion exists for an investigatory stop. *See United States v. Sims*, 296 F.3d 284, 287 (4th Cir. 2002) (holding that defendant's evasive behavior—which reasonably suggested he was hiding from officers and not simply "going about his business"—supported finding of reasonable suspicion for investigatory stop (alteration & internal quotation marks omitted)); *United States v. Brugal*, 209 F.3d 353, 360–61 (4th Cir. 2000) (en banc) (plurality opinion) (concluding that officers had reasonable suspicion to stop vehicle that immediately exited interstate after passing "decoy" signs indicating drug checkpoint was ahead, in part because area surrounding exit was deserted when vehicle exited at 3:30 a.m.); *United States v. Sprinkle*, 106 F.3d 613, 618 (4th Cir. 1997) ("Evasive conduct can, of course, assist an officer in forming reasonable suspicion."); *see also United States v. Humphries*, 372 F.3d 653, 657, 660 (4th Cir. 2004) (explaining, in context of probable cause analysis, that officers may consider "evasive conduct that falls short of headlong flight," such as walking away from approaching officers at a quick pace and ignoring commands to stop). We therefore hold that when law enforcement officers observe conduct suggesting that a driver is attempting to evade a police roadblock—such as unsafe or erratic driving or behavior indicating the driver is trying to hide from officers—police may take that behavior into account in determining whether there is reasonable suspicion to stop the vehicle and investigate the situation further. *See United States v. Montero–Camargo*, 208 F.3d 1122, 1138–39 (9th Cir. 2000) (en banc) (holding that U-turn of defendants' vehicles shortly before reaching border checkpoint, combined with other factors, including fact that vehicle subsequently stopped on side of highway in isolated area, provided reasonable suspicion for investigatory stop); *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996) (holding that defendant's apparent attempt to avoid roadblock by turning into parking lot was a factor supporting reasonable suspicion to stop vehicle); *see also United States v. Brignoni–Ponce*, 422 U.S. 873, 884–85 [95 S.Ct. 2574, 45 L.Ed.2d 607] (1975) (explaining that among other factors officers may consider in determining whether reasonable suspicion exists to stop a vehicle near the border, "[t]he driver's

behavior may be relevant, as erratic driving or obvious attempts to evade officers can support a reasonable suspicion").

*United States v. Smith*, 396 F.3d 579, 584–85 (4th Cir. 2005) (alterations by court).

In *Smith*, 396 F.3d at 585, the Fourth Circuit further determined based on the totality of the circumstances, the officers possessed a reasonable suspicion Smith was engaged in criminal activity. The court based its decision on the following factors:

The officers observed Smith's vehicle brake abruptly and turn suddenly into a private gravel driveway. Smith's erratic driving and the nature of the road onto which he turned could have reasonably suggested to the officers that Smith was attempting to evade the roadblock rather than simply "going about [his] business," *Wardlow*, 528 U.S. at 125 [120 S.Ct. 673] (internal quotation marks omitted). *See Steinbeck v. Commonwealth*, 862 S.W.2d 912, 914 (Ky. Ct. App. 1993) (finding reasonable suspicion for investigatory stop when, at 3:15 a.m., defendant's vehicle turned onto unpaved and uninhabited road before reaching roadblock). Upon further investigation, Officer McCoy observed Smith's vehicle stopped in the middle of the driveway, more than 200 feet from the public road but still some distance from the residence. McCoy could have reasonably inferred from this observation that Smith was attempting to evade the police checkpoint by hiding in the driveway and was not simply turning into the driveway because he lived there or because he was turning around to avoid the checkpoint for innocent reasons, such as a belief that an accident was ahead. *See Smith v. State*, 515 So.2d 149, 150, 151 (Ala. Crim. App. 1987) (holding that investigatory stop of defendant's vehicle was justified when officer observed vehicle come around a curve approximately 200 yards from roadblock, turn rapidly into a private driveway, and stop 50 feet from a residence with its lights off but engine running); *State v. D'Angelo*, 605 A.2d 68, 70–71 (Me. 1992) (finding reasonable suspicion when defendant's vehicle turned into private driveway 75 yards before checkpoint, officer knew some residents of home but had never seen defendant's vehicle parked there, and occupants of vehicle did not exit after stopping engine

and turning off lights but instead turned to observe police activities); *State v. Foreman* [351 N.C. 627], 527 S.E.2d 921, 922–23 (2000) (concluding that officer possessed reasonable suspicion when defendant's vehicle made abrupt turn before reaching checkpoint, made second abrupt turn, and parked in residential driveway with its lights and engine off). And although McCoy had activated his police lights, Smith's vehicle did not remain stopped—as one would expect of a driver who turned away from the roadblock for innocent reasons—but instead proceeded around the curve in the driveway. As the district court recognized, this additional evasive behavior gave McCoy further reason to believe that Smith might be engaged in criminal activity. *See Watkins v. City of Southfield,* 221 F.3d 883, 889 (6th Cir. 2000) ("[T]he fact that [the defendant] refused to stop when [officers turned on their police lights] contributed to the officers' suspicion that criminal activity may have been afoot."); *United States v. Lyles,* 946 F.2d 78, 80 (8th Cir. 1991) (considering, in reasonable suspicion analysis, the fact that "[w]hen the officers stopped behind the [defendants'] car and turned on the flashing red lights, the car began to drive away"); *United States v. Walraven,* 892 F.2d 972, 975–76 (10th Cir. 1989) (holding that reasonable suspicion existed for investigatory stop in part because vehicle failed to stop promptly in response to police lights). Thus, by the time Smith finally submitted to McCoy's display of authority by stopping at the end of the driveway, McCoy had observed Smith engage in a series of evasive actions—all inconsistent with innocent reasons for avoiding the roadblock. And, all of this conduct occurred at 3:05 a.m., compounding the suspiciousness of Smith's behavior. *See United States v. Lender,* 985 F.2d 151, 154 (4th Cir. 1993) (explaining that "[t]he lateness of the hour is another fact that may raise the level of suspicion"). We conclude that these facts, viewed in their totality, provided the officers with reasonable suspicion that Smith may have been engaged in criminal activity, thus permitting them to stop his vehicle to investigate that suspicion.

*Smith,* 396 F.3d at 585–87 (alterations by court) (footnotes omitted).

In *Griffin*, 749 S.E.2d at 447, the Supreme Court of North Carolina addressed whether actions similar to those of Williams constituted reasonable suspicion. In that case:

Defendant approached a checkpoint marked with blue flashing lights. Once the patrol car lights became visible, defendant stopped in the middle of the road, even though he was not at an intersection, and appeared to attempt a three-point turn by beginning to turn left and continuing onto the shoulder. From the checkpoint[,] Trooper Casner observed defendant's actions and suspected defendant was attempting to evade the checkpoint. Defendant's turn in the middle of the road and onto the shoulder was more suspicious than the defendant's turn onto a connecting street in *Foreman* and the defendant's turn into a private driveway in *Smith*. It is clear that this [c]ourt and the Fourth Circuit have held that even a legal turn, when viewed in the totality of the circumstances, may give rise to reasonable suspicion. Given the place and manner of defendant's turn in conjunction with his proximity to the checkpoint, we hold there was reasonable suspicion that defendant was violating the law; thus, the stop was constitutional.

*Id.*

The State contended it had both probable cause and reasonable suspicion. Police can stop a car based on either probable cause that a traffic violation has occurred or reasonable suspicion an occupant is involved in criminal activity. Like in *Smith*, 396 F.3d at 585–87, and *Griffin*, 749 S.E.2d at 447, Williams's behavior indicated he was trying to hide from the police. All of the circumstances combined—his evasiveness; the time, 3 a.m.; the U-turn upon seeing the checkpoint; the turning into a parking lot; his turning off his headlights; and his pulling to the back of the parking lot—gave Trooper Robertson a reasonable suspicion that criminal activity was afoot. Accordingly, the State had to demonstrate it had either reasonable suspicion the suspect was involved in criminal activity *or* probable cause to believe a traffic violation had occurred. Because the State showed it had reasonable suspicion, it was not required to also show it had probable cause.

Therefore, the magistrate erred in dismissing the case for lack of probable cause to believe a traffic violation had occurred.[9][10]

## II. Motion for Dismissal

 The State maintains the magistrate exceeded its authority in considering Williams's motion to dismiss because dismissal was not a proper remedy and magistrates do not have the power to hold pretrial preliminary hearings for charges that fall within their jurisdiction. We agree.

## A. Preservation

Williams asserts this issue is not preserved for our review. We disagree.

"To preserve an issue for appellate review, an appellant must object at his first opportunity." *State v. Sullivan*, 310 S.C. 311, 314, 426 S.E.2d 766, 768 (1993). "A party cannot for the first time raise an issue by way of a Rule 59(e)[, SCRCP,] motion [that] could have been raised at trial." *Patterson v. Reid*, 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct. App. 1995). However, this court has found an issue preserved when a party raises for the first time in a motion for reconsideration the court failed to use the proper standard. *MailSource, LLC v. M.A. Bailey & Assocs., Inc.*, 356 S.C. 370, 374–75, 588 S.E.2d 639, 641 (Ct. App. 2003).

In *State v. Williams*, Respondent Smith argued the issue on appeal was unpreserved because the State did not oppose the

---

9. Because we find the State had reasonable suspicion to stop Williams, we need not address its argument it had probable cause as well. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

10. Additionally, the State asserts Trooper Robertson did not actually stop Williams because he was already stopped in the parking lot when Trooper Robertson approached him. We agree with Williams this argument is not preserved for review because this is the first time the State has raised it. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693–94 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal."); *State v. Harris*, 311 S.C. 162, 167, 427 S.E.2d 909, 912 (Ct. App. 1993) ("An issue not raised at trial is waived on appeal.").

hearing when Respondents moved that it be held. 321 S.C. 381, 385 n.3, 468 S.E.2d 656, 658 n.3 (1996).

> In moving for the hearing, Respondents asked the trial court to rule on the . . . issue "prior to allowing the testimony to come before the jury inasmuch as there is a risk of prejudice if certain statements may be testified to . . ., at which point we would not be able to cure that in front of the jury." The State was given no indication that the trial court would peremptorily dismiss the charges at the close of a hearing the stated purpose of which was to prevent prejudice. Thus, we disagree with Respondent Smith that the State is procedurally barred from raising this issue.

*Id.* at 385–86 n.3, 468 S.E.2d at 658 n.3.

Our supreme court has observed "it may be good practice for us to reach the merits of an issue when error preservation is doubtful." *Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 330, 730 S.E.2d 282, 285 (2012). "[W]here the question of preservation is subject to multiple interpretations, any doubt should be resolved in favor of preservation." *Id.* at 333, 730 S.E.2d at 287 (Toal, C.J., concurring in part and dissenting in part).

The State did not raise an objection at the initial hearing. However, the transcript of the hearing contains no mention Williams's motion was a motion to dismiss. At the beginning of the hearing, the magistrate told Williams "I understand you . . . have pre-trial motions," and Williams responded he was "asking the [S]tate for proper evidence to support that the checkpoint meets constitutional muster." At the end of the hearing, the magistrate stated, "I am going to grant the [d]efense motions." Nothing in the transcript of the hearing indicates Williams's motion was for a dismissal. Further, the record does not contain a written motion to dismiss. At the hearing on the State's motion for reconsideration, the State explained its issue was about the specific remedy in question in the particular case, that the case was dismissed. The State asserted Williams had never asked for a dismissal and that would not be a proper remedy.

We consider this argument preserved because the State asserted it did not realize at the initial hearing the magistrate was dismissing the case and the record does not dispute that.

Like in *Williams*, 321 S.C. at 385–86 n.3, 468 S.E.2d at 658 n.3, if the State did not realize the magistrate was dismissing the case until it received the written decision, this issue is preserved because once the State received the magistrate's decision, it raised the issue in its motion to reconsider. Accordingly, we will address the merits.

## B. Merits

In general, magistrates have criminal jurisdiction "of all offenses which may be subject to the penalties of either fine or forfeiture not exceeding five hundred dollars or imprisonment in the jail or workhouse not exceeding thirty days." S.C. Code Ann. § 22–3–550 (2007). For crimes outside magistrates' jurisdiction, magistrates are authorized to conduct a preliminary examination. *See* Rule 2, SCRCrimP ("Any defendant charged with a crime not triable by a magistrate shall be brought before a magistrate and shall be given notice of his right to a preliminary hearing."). The purpose of a preliminary examination is to determine whether probable cause exists to believe that the defendant committed the crime and to warrant the defendant's subsequent trial. 12 S.C. Jurisprudence *Magistrates and Municipal Judges* § 31. Nevertheless, for those matters within magistrates' jurisdiction, *preliminary determinations of probable cause are not authorized by statute*. Indeed, South Carolina law requires that all magistrate proceedings "shall be summary or with only such delay as a fair and just examination of the case requires." S.C. Code Ann. § 22–3–730 (2007).

*State v. Ramsey*, 381 S.C. 375, 376–77, 673 S.E.2d 428, 428–29 (2009) (emphasis added).

 "[T]here is no authority for the proposition that magistrates are authorized to conduct preliminary hearings on matters within their own trial jurisdiction. To hold otherwise would undermine the summary nature of magistrate proceedings and unduly expand magistrate dockets." *Id.* at 377, 673 S.E.2d at 429. In *Ramsey*, the supreme court determined "the magistrate judge should have declined Respondent's request for a probable cause hearing and instead brought the charge to trial for summary disposition. The trial court therefore erred in considering the merits of the probable cause inquiry

and affirming the magistrate." *Id.* at 377–78, 673 S.E.2d at 429.

As noted above, the magistrate erred in finding the State had to prove the constitutionality of the checkpoint and dismissing the case because the State lacked probable cause. However, the magistrate also erred in holding a pretrial probable cause hearing instead of proceeding to trial because this matter was within its jurisdiction.

"[A] trial court generally has no power to dismiss a properly drawn indictment issued by a properly constituted grand jury before trial unless a statute grants that power to the court. The prosecutor may, of course, request the dismissal of an indictment or charge." *State v. Needs*, 333 S.C. 134, 146, 508 S.E.2d 857, 863 (1998), *modified on other grounds*, *State v. Cherry*, 361 S.C. 588, 606 S.E.2d 475 (2004).

A statute may authorize the court, either of its own motion or on the application of the prosecuting officer, to order an indictment or prosecution dismissed. But in the absence of such a statute, a court has no power ... to dismiss a criminal prosecution except at the instance of the prosecutor....

*State v. Ridge*, 269 S.C. 61, 65, 236 S.E.2d 401, 402 (1977) (alterations by court) (quoting *In re Brittian*, 263 S.C. 363, 366, 210 S.E.2d 600, 601 (1974)).

The magistrate erred in dismissing the case. The proper remedy for evidence obtained in violation of the Fourth Amendment is suppression. *See State v. Gamble*, 405 S.C. 409, 416, 747 S.E.2d 784, 787 (2013) ("The Fourth Amendment prohibits unreasonable search and seizure, and requires that evidence seized in violation of the Amendment be excluded from trial."). Accordingly, the magistrate erred in dismissing the DUI case against Williams because even if the stop had been unconstitutional, the magistrate only had the authority to suppress the evidence.

## CONCLUSION

The magistrate court and circuit court erred in dismissing the case. Accordingly, those orders are

**REVERSED AND REMANDED.**

FEW, C.J., and MCDONALD, J., concur.